## IN UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORAH FLAHERTY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-01990 |
| v. | FIRST AMENDED **CLASS ACTION COMPLAINT** |
| HELLO PRODUCTS LLC | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiff, NORAH FLAHERTY ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her First Amended Class Action Complaint against the Defendant, HELLO PRODUCTS LLC ("Defendant"), Plaintiff alleges and states as follows:

### PRELIMINARY STATEMENT

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, and unjust enrichment, resulting from the illegal actions of Defendant, in intentionally labeling its products with false and misleading claims that they contain no artificial sweeteners, when the products contain the artificial sweeteners sorbitol and xylitol. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

2.     Plaintiff is an individual who was at all relevant times residing in Chicago, Illinois.

3.     Defendant is a Delaware limited liability company, whose principal place of business is located in North Bergen, New Jersey.

4.     At all times relevant hereto, Defendant was engaged in the marketing, manufacturing, and sale of person care products.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to Defendant's removal and assertion that this Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

7.     Defendant manufactures, advertises, markets, sells, and distributes personal care throughout the United States.

8.     During the Class Period Defendant sold the following toothpastes (the "Products") labeled, marketed, and advertised as containing no artificial sweeteners but which contain the artificial sweeteners sorbitol and xylitol:

      a.   Hello fresh naturally whitening fluoride toothpaste farm grown mint;

      b.   Hello activated charcoal fluoride free toothpaste fresh mint and coconut oil;

      c.   Hello antiplaque + whitening fluoride free toothpaste farm grown peppermint;

    d.   Hello unicorn sparkle fluoride toothpaste bubble gum;

    e.   Hello bye bye bacteria fluoride toothpaste;

    f.   Hello kids dragon dazzle fluoride toothpaste;

    g.   Hello kids fluoride free toothpaste natural watermelon;

    h.   Hello activated charcoal epic whitening fluoride toothpaste;

    i.   Hello wild strawberry kids fluoride toothpaste;

    j.   Hello antiplaque + whitening toothpaste tablets;

    k.   Hello kids juicy grape fluoride toothpaste;

    l.   Hello toddler training toothpaste apple flavor;

    m.   Hello activated charcoal toothpaste tablets;

    n.   Hello good night lavender and chamomile fluoride free toothpaste;

    o.   Hello good morning meyer lemon fluoride free toothpaste;

    p.   Hello watermelon toothpaste tablets;

    q.   Hello gum nourishmint fluoride toothpaste;

    r.   Hello freakin' fresh + whitening fluoride free toothpaste.

9.    All of the Products listed in Paragraph No 6. above are substantially similar because all Products are toothpastes, all products contain the same false "no artificial sweeteners" labeling, all Products contain the same challenged ingredients sorbitol and xylitol.

10.    Plaintiff, like any reasonable consumer, expects that products advertised as containing no artificial sweeteners will only be sweetened with natural sweeteners and will not contain artificial sweeteners.

11.     Reasonable consumers, like Plaintiff, understand the term "artificial" based on common parlance, such that the term artificial means "made by people".[1]

12.     Reasonable consumers, like Plaintiff, understand the term "sweetener" based on common parlance, such that the term sweetener means a "substance used to make food or drink taste sweeter".[2]

13.     On January 7, 2023, Plaintiff purchased a Hello fresh naturally whitening fluoride toothpaste farm grown mint Product from a target located at 2112 W. Peterson Ave, in Chicago.

14.     When Plaintiff purchased her Product, she made her purchasing decision after reviewing labeling on the front of the package stating the Product contained "No Artificial Sweeteners".

15.     Plaintiff forwent purchasing other products instead of Defendant's Product because of the "No Artificial Sweeteners" labeling.

16.     Hydrogenation is a synthetic reaction that between hydrogen gas and an unsaturated double bond in a molecule under high pressure in the presence of a metal catalyst.[3]

///

///

///

///

---

[1] Meaning of Artificial in English, dictionary.cambridge.org, accessed 5/3/2023, https://dictionary.cambridge.org/us/dictionary/english/artificial;

[2] Definition of Sweetner noun from the Oxford Advanced Learner's Dictionary, oxfordlearnersdictionaries.com, accessed 5/3/2023: https://www.oxfordlearnersdictionaries.com/definition/english/sweetener

[3] Monoj K Gupta, Practical Guide To Vegetable Oil Processing https://www.sciencedirect.com/book/9781630670504/practical-guide-to-vegetable-oil-processing

17.    The following diagram depicts the hydrogenation process: [4]



18.    This synthetic reaction must occur under a temperature of 212–302∘F and a pressure of 98–148 times standard atmospheric pressure. In addition, for the reaction to occur a metal catalyst typically nickel, molybdenum, palladium, or platinum must be present alongside hydrogen gas.

19.    As demonstrated in Paragraphs No. 16 through 18 above, natural substances are chemically altered when reacted with a metal catalyst in the presence of hydrogen gas so that they are different than how they naturally occur. Furthermore, this chemical change results from a non-naturally occurring reaction. As a result, all the hydrogenated ingredients in the Products are artificial.

20.    Sorbitol is a synthetic chemical prepared by hydrogenation of starch or glucose syrups.

///

---

[4]         Catalytic         Hydrogenation         of         Alkenes,
https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_
Chemistry)/Alkenes/Reactivity_of_Alkenes/Catalytic_Hydrogenation

21.     The following are skeletal formulas of the reaction necessary to create sorbitol:



22.     The following chart depicts the chemical steps between natural glucose and the artificial sorbitol:

Glucose

Hydrogenation

Sorbitol

23.     Defendant's website shows a picture of corn directly next to a description of sorbitol, on information and belief, that is because Defendant's sorbitol is synthetically produced from corn.[5]

24.     Sorbitol production from corn requires the use of hydrogenation.[6]

25.     As a result, the sorbitol in Defendant's Products is artificial because it was made by people using a synthetic process.

26.     Xylitol is a synthetic chemical prepared by hydrogenation of xylose.

_____

[5] Hello Products LLC, Say hello to our thoughtfully-sourced ingredients, https://www.hello-products.com/about/ingredients/
[6] Sorbitol, European Association of Polyol Producers, https://polyols-eu.org/polyols/sorbitol/#:~:text=They%20are%20also%20known%20as,maize%2C%20wheat%2 0and%20tapioca%20starches.

27.     The following are skeletal formulas of the reaction necessary to create xylitol:



28.     The following chart depicts the chemical steps between natural xylose and the artificial xylitol:

Xylose

Hydrogenation

Xylitol

29.     Defendant admits on its website that its xylitol is sourced from corn.[7]

30.     Xylitol production from corn requires the use of hydrogenation.[8]

31.     As a result, the xylitol in Defendant's Products is artificial because it was made by people using a synthetic process.

///

///

///

---

[7] Hello Products LLC, xylitol is good for your teeth- but do you known what it is?, https://www.hello-products.com/about/ingredients/xylitol/
[8] Method for making xylitol by corn cob, CN200810228075A, https://patents.google.com/patent/CN101723799A/en

32.    The following are examples of the Products' fraudulent labeling:










  

  

  



33.     A photo of Plaintiff's Product, attached hereto as Exhibit A, shows the "no artificial sweeteners" label on the front of the package she purchased.

34.     Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

35.     By making false and misleading claims about the Products, Defendant impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

36.     Therefore, Plaintiff has been deprived of her legally protected interest to obtain true and accurate information about her consumer products as required by law.

37.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would contain no artificial sweeteners.

38.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class paid a price premium for a premium Product, but instead received a non-premium Product with artificial sweeteners.

39.     Plaintiff and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products contained no artificial sweeteners.

40.     Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as containing no artificial sweeteners when they do, Plaintiff could not have known that the Product contained artificial sweeteners.

41.     Plaintiff was unaware that the Product contained artificial sweetener when she purchased it.

42.     Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

43.     Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as containing no artificial sweeteners was false,

deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products they purchased contained artificial sweeteners unless Defendant expressly told them.

44.     On information and belief, Defendant employs professional chemists to create the chemical formulas of Defendant's Products. Therefore, Defendant through its employees knew that the sorbitol and xylitol in Defendant's Products were artificially produced, and that by adding sorbitol and xylitol to its Products they would contain artificial sweeteners.

45.     On information and belief, Defendant did know that Products contained artificial sweeteners but chose to label the Products as containing no artificial sweeteners because it did not believe its customers were well educated enough to know the difference.

46.     As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.     Lost money;

      b.     Wasting Plaintiff's time; and

      c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

47.      Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

///

48.     Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

49.     Defendant, its employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter

50.     The Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

51.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

52.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

> a.     Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "No Artificial Sweeteners" on the front of the Products' packaging;

12

b.     Whether the Class members were informed of the inclusion of artificial sweeteners in the Products;

c.     Whether the Products contain artificial sweeteners;

d.     Whether Defendant's conduct was unfair and deceptive;

e.     Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.     Whether the statement "No Artificial Sweeteners" is misleading or false;

g.     Whether there should be a tolling of the statute of limitations; and

h.     Whether the Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs

53.     As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class.

54.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

56.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By

contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

57.     The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

58.     Plaintiff's claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same false labeling and the same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendant.

59.     Defendant has acted or refused to act in respect generally applicable to the Class thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

60.     Defendants failed to comply with the requirements of the ILCFA, including but not limited to 815 ILCS 505/2 as to the Class with respect to the above-alleged transactions.

61.     The size and definition of the Class can be identified by Defendant's own records.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.***

62.     Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 61 above as if fully reiterated herein.

63.     Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

64.     Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

65.     815 ILCS 505/2 states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

66.     Through its representation that the Products contained no artificial sweeteners, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

67.     815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

68.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

69.     Defendant failed to comply with the requirements of the ILCFA, including, but not

limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

70.     By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.      An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.      An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.      An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.      Judgment against Defendant in an amount to be determined at trial;

e.      An order for injunctive relief prohibiting such conduct by Defendant in the future;

f.      Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.      Any other relief deemed just and proper by this Court.

**COUNT II**
**COMMON LAW FRAUD**

71.     Plaintiff incorporates all of the allegations and statements made in Paragraphs 1

16

through 61 above as if fully reiterated herein.

72.     Through its false statements that the Products contained no artificial sweeteners, Defendant made false statements of material fact.

73.     At the time Defendant made its statements to Plaintiff that the Products contained no artificial sweeteners, it knew, or reasonably should have known, that the statements described above were false.

74.     At the time Defendant made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

75.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Product she purchased contained artificial sweeteners.

76.     As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

      a.  An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

      b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendant in the future;

f. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT

77. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 61 above as if fully reiterated herein.

78. Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

79. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products did not contain artificial sweeteners.

80. Defendant's retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products contained artificial sweeteners.

81. Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

h. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

i. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

j. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

k. Judgment against Defendant in an amount to be determined at trial;

l. An order for injunctive relief prohibiting such conduct by Defendant in the future;

m. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

n. Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECFULLY SUBMITTED,

NORAH FLAHERTY

19

/s/ Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, California 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, IL 60062
Phone: (224) 218-0875
Steven.Perry@toddflaw.com